[Cite as *State v. Taylor*, 2019-Ohio-4664.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff - Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, J. |
| -vs- | : | |
| | : | |
| CORTEZ TAYLOR, | : | Case No. 2019CA00033 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Canton Municipal
                                  Court, Case No. 2018TRC09347

JUDGMENT:                         Affirmed

DATE OF JUDGMENT:                 November 12, 2019

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

KRISTEN BATES AYLWARD                     AARON KOVALCHIK
Canton Law Director                       116 Cleveland Ave. NW
                                          Suite 808
JASON P. REESE                            Canton, Ohio 44702
Canton City Prosecutor

KATIE ERCHICK GILBERT
Deputy Chief Counsel
218 Cleveland Ave. S.W.
P.O. Box 24218
Canton, Ohio 44701-4218

*Baldwin, J.*

**{¶1}** Defendant-appellant Cortez Taylor appeals his conviction and sentence from the Canton Municipal Court. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACT AND CASE

**{¶2}** On November 24, 2018, appellant was cited and charged with operating a motor vehicle while under the influence of drugs and/or alcohol in violation of R.C. 4511.19(A)(2), a misdemeanor of the first degree. On December 26, 2018, appellant filed a Motion Suppress. Following a hearing held on January 22, 2019, the trial court, as memorialized in a Judgment Entry filed on January 24, 2019, denied the motion, finding that there was probable cause for the arrest of appellant.

**{¶3}** Thereafter, a jury trial commenced on February 6, 2019. At the trial, Officer Gary Lee Dodge, Jr. of the North Canton Police Department testified that he was working for the Stark County OVI Task Force on November 24, 2018 when he stopped appellant's vehicle for a burnt out tail light in his pickup truck. Officer Dodge testified that as he approached appellant, he observed that appellant's pupils were dilated and bloodshot and his eyes were bloodshot. When appellant began speaking to him, the Officer also "could smell an odor of alcohol coming from his breath." Trial Transcript at 56. Appellant told Officer Dodge that he had had two Bud Light Platinums, which has a higher content of alcohol by volume than a regular Bud Light, about a half an hour before. Appellant also told that Officer that he had a couple of shots.

**{¶4}** Officer Dodge then had appellant perform field sobriety tests. The following testimony was adduced when the Officer was asked how appellant performed on the horizontal gaze nystagmus (HGN) test:

**{¶5}**   A:  He showed strong signs of impairment immediately –

**{¶6}**   Q:  What –

**{¶7}**   A:  -- which is—

**{¶8}**   Q:  --do you mean by strong?  Excuse Me. (CLEARS THROAT)

**{¶9}**   A:  His eyes were jerking in an irregular rate which indicated that there was a sufficient amount of alcohol in his bloodstream which based on my experience I could tell exactly how much had had over the legal limit because his eyes were jerking as much as they were.

**{¶10}** Q:  And in your experience, how much did you believe the defendant had?

**{¶11}** A:  I believe that he had probably five or six drinks.

**{¶12}** Trial Transcript at 58-59.  Officer Dodge also had appellant perform the walk and turn test. He testified that appellant did pretty good on this test but made a few small errors. Appellant did not touch completely heel to toe and there was a "gap in between a few of his steps, which is a clue of impairment,…" Trial Transcript at 60.  Appellant also did not complete the turn as Officer Dodge had described it. The Office testified that appellant performed the one leg stand test correctly.

**{¶13}** After the field sobriety tests, Officer Dodge took appellant to the North Canton Police Department where he asked appellant if appellant was willing to take a breathalyzer test. Appellant told him that he had injured his mouth while eating something the night before and was not willing to blow because his mouth hurt. Appellant did not blow into the machine and was told that this was going to be considered a refusal to take the test. When asked why he did not offer appellant a urine test, the Officer testified that he usually used such test when there was suspicion of drugs and that there was no

suspicion of drug use in this case. Appellant was then advised that because of his prior OVI, he would automatically lose his license for two years.  Officer Dodge testified that appellant told him that he had a low tolerance for alcohol because he had not drank since his prior OVI between twelve and thirteen months before.

{¶14}  On cross-examination, Officer Dodge testified that he did not see appellant commit any traffic violations or bad driving.  He also admitted that he did not indicate that appellant had bloodshot eyes in his narrative report or impaired driver's report.

{¶15}  Appellant testified in his own defense.  He testified that when he was talking about shots, he was referring to the beer because he was not a beer drinker and normally drank liquor "and when we refer to the drink, we call it shot, so I was referring to the two beers that I have drank." Trial Transcript at 84.   He testified that he only had two drinks on the night in question. Appellant testified that he never refused to take the breath test, but told the Officer that he did not want to take the test and would take a blood test. On cross-examination, appellant did not remember telling Officer Dodge that his tolerance was down and testified that he did not know the alcohol content of Platinum beers.

{¶16}  Appellant also testified that his eyes looked different on the night of his arrest because orange lights were used as street lights and "the orange lights reflecting off the white surface will produce an orange glare." Trial Transcript at 89.

{¶17}  At the conclusion of the evidence and the end of deliberations, the jury found appellant guilty of operating under the influence of alcohol and/or drugs of abuse. As memorialized in a Judgment Entry filed on February 6, 2019, appellant was sentenced to 180 days in jail and fined $800.00. All but 20 days were suspended on condition of appellant's good behavior of a term of two years. Appellant was also ordered to complete

25 hours of supervised community service.  A Nunc Pro Tunc Judgment Entry was filed on February 8, 2019.

**{¶18}** Appellant now raises the following assignment of error on appeal:

**{¶19}** "I.  APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

I

**{¶20}** Appellant argues that his conviction for OVI is against the manifest weight and sufficiency of the evidence. We disagree.

**{¶21}** When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Monroe,* 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285, ¶ 47. Sufficiency is a test of adequacy. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. Accordingly, the question of whether the offered evidence is sufficient to sustain a verdict is a question of law. *State v. Perkins,* 3d Dist. Hancock No. 5-13-01, 2014-Ohio-752, 2014 WL 855870, ¶ 30, citing *Thompkins* at 386, 678 N.E.2d 541.

**{¶22}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and

a new trial ordered'." *Thompkins*, supra at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720-721 (1983).

**{¶23}** "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraph one of the syllabus. The trier of fact is in the best position to judge the credibility of the witnesses.

**{¶24}** Appellant was convicted of OVI in violation of R.C. 4511.19(A)(2)(a). Such section states, in relevant part, as follows: "(2) No person who, within twenty years of the conduct described in division (A)(2)(a) of this section, previously has been convicted of or pleaded guilty to a violation of this division, a violation of division (A)(1) or (B) of this section, or any other equivalent offense shall do both of the following:

**{¶25}** (a) Operate any vehicle, streetcar, or trackless trolley within this state while under the influence of alcohol, a drug of abuse, or a combination of them;…

**{¶26}** Appellant was not, as alleged by appellee, convicted of violating R.C. 4511.19(A)(2)(b) which states as follows: (b) Subsequent to being arrested for operating the vehicle, streetcar, or trackless trolley as described in division (A)(2)(a) of this section, being asked by a law enforcement officer to submit to a chemical test or tests under section 4511.191 of the Revised Code, and being advised by the officer in accordance with section 4511.192 of the Revised Code of the consequences of the person's refusal or submission to the test or tests, refuse to submit to the test or tests.

**{¶27}** In the case sub judice, there was testimony that appellant, who was stopped for having a burnt tail light, smelled of alcohol, and had bloodshot and dilated eyes. Appellant admitted to having consumed two Bud Light Platinum Beers thirty minutes

before he was stopped and also admitted that he had consumed a couple of shots. While appellant testified that he was referring to the two beers that he had consumed when he spoke of the shots, the jury, as trier of fact, was in the best position to assess his credibility.

**{¶28}** There also was testimony that appellant exhibited strong signs of impairment during the HGN test. As is stated above, Officer Dodge testified that appellant's eyes "were jerking in an irregular rate which indicated that there was a sufficient amount of alcohol in his bloodstream.." and that based on his experience, he believed that appellant had probably had five or six drinks. Trial Transcript at 58. In addition, appellant, who had a prior OVI in 2017, failed to touch heel to toe, had gaps between his step and did not turn properly during the walk and turn test. Officer Dodge testified that even if appellant had been disabled and could not have performed the one leg stand and walk and turn test, he would have been arrested "[b]ased on the totality of the circumstances…-- based on the observation of how impaired his eyes were showing based on the Horizontal Gaze Nystagmus …, his eyes were jerking irregularly and he was impaired." Trial Transcript at 62.

*{¶29}* Officer Dodge also testified that appellant refused to submit to a breath test. Appellant testified that he offered to submit to a urine test and that, therefore, he never refused to take a test and argues that Officer Dodge's failure to allow him to submit to a urine or blood test "should not ultimately be held against him as a refusal." However, appellant had no right to a choice of the type of chemical test available. See *City of Mount Vernon v. Seng,* 5th Dist. Knox No. 04CA000012, 2005–Ohio–2915, ¶ 46.

**{¶30}** Based on the foregoing, we find that any rational trier of fact, construing the evidence in in a light most favorable to the prosecution, could have found that appellant committed the offense of OVI in violation of R.C. 4511.19(A)(2)(a).  We further find that the jury did not lose its way in convicting appellant.

**{¶31}** Appellant's sole assignment of error is, therefore, overruled.

**{¶32}** Accordingly, the judgment of the Canton Municipal Court is affirmed.

By: Baldwin, J.

Wise, John, P.J. and

Wise, Earle, J. concur.